**GANT COOLEY COTTON COMPANY, INC.,**
**Appellant,**

**v.**

**Fred THOMS et al., Appellees.**

**No. 782.**

Court of Civil Appeals of Texas,
Corpus Christi.

July 31, 1973.

Thomas A. Blakeley, Jr., Dallas, for appellant.

Harry J. Schulz, Three Rivers, for appellee.

## OPINION

BISSETT, Justice.

This is a venue case. Gant Cooley Cotton Company, Inc., plaintiff, brought suit in the District Court of Nueces County, Texas, against Fred Thoms, David Thoms, Harry J. Schulz and J. Gerald Schulz, defendants, for cancellation of five written contracts for the purchase of cotton produced by defendants during the 1972 season from five separate farms, all of which were alleged to be situated in Live Oak County. The defendants Fred Thoms, David Thoms and Harry J. Schulz, residents of Live Oak County, filed pleas of privilege to be sued in the county of their residence. The defendant J. Gerald Schulz resided in Nueces County. Plaintiff, in the trial court, sought to maintain venue in Nueces County under Subdivisions 4 and 5, Article 1995, Vernon's Ann.Civ.St.

All of the contracts were introduced in evidence at the hearing on the pleas of privilege. The trial court, after a non-jury hearing, sustained all of the pleas of privilege and transferred the cause as to all defendants to the District Court of Live Oak County. Subsequently, a partial settlement of the suit was reached, the result of which was to settle the matters in controversy relating to three of the contracts. That settlement also eliminated the issue of venue under Subdivision 4 from the case.

Plaintiff's single point asserts that the trial court erred in sustaining defendants' pleas of privilege because venue is maintainable in Nueces County under Subdivision 5. The parties will be referred to as plaintiff and defendants, as they were in the trial court.

Plaintiff, in its petition, sought only the cancellation and rescission of the aforesaid contracts. The only grounds plead by plaintiff as a basis for such cancellation and recission are that the defendants "failed and refused to harvest and gin the cotton in a good husband-like manner and in accordance with normal cotton harvesting and ginning procedures", that "the cotton grown and ginned by sellers does not conform to the contract", and that the "failure of the respective defendants to

properly harvest and gin cotton constitutes a breach that goes to the whole contract".

Following the filing by defendants of their pleas of privilege, plaintiff then filed its controverting plea, wherein in addition to adopting and incorporating its petition as part of the plea, it was alleged:

"Plaintiff's cause of action is based upon five written contracts for the sale of cotton, each of which provides for performance on the part of Defendants to deliver all of the cotton to Plaintiff at Corpus Christi, Nueces County, Texas. Venue of this suit is properly in Nueces County, Texas, under Exception 5, Article 1995, R.C.S."

Plaintiff contends that venue was established in Nueces County by virtue of a written contract between plaintiff (as purchaser) and the defendant Fred Thoms (as seller), dated January 25, 1972, covering the cotton to be grown on the "Harris Farm", hereinafter called the "Fred Thoms Contract", and a written contract between plaintiff (as purchaser) and the defendants Harry J. Schulz, Fred Thoms and David Thoms (as sellers), dated January 28, 1972, covering the cotton to be grown on the "Harry Schulz Farm", hereinafter called the "Harry Schulz Contract".

The provisions of the Fred Thoms Contract relied upon by plaintiff on the matter of venue are:

"(1) The price shall be 33.00 Hoground and 26.00 for Below Grades F.O.B. any Compress, Corpus Christi, Texas, Net Weights, Compress tickets and Green Cards to be presented for payment according to Texas Cotton Association rules. The Seller pays Compress charges and $1.00 per bale research and all weight docks. To be delivered by September 31, 1972.

(2) Seller agrees to gather and deliver the cotton as promptly as possible in a good and husband-like manner, . . ."

The provisions of the Harry Schulz Contract which plaintiff says fixed venue in Nueces County read:

"(1) The price shall be thirty three cents ($0.33) per pound hog-round regardless of grade, fineness, quality or classification except that for any bale which is 'Below Grade' according to Government classifications, the price shall be twenty six cents ($0.26) per pound F.O.B. Gulf Compress, Corpus Christi, Texas, Net Weights, Compress tickets and Green Cards to be presented for payment according to Texas Cotton Association rules. The seller pays Compress charges and $1.00 per bale research and all weight docks. All cotton covered hereby shall be delivered by September 31, 1972.

(2) Seller agrees to gather and deliver the cotton as promptly as possible in a good and husband-like manner, . . ."

The Harry Schulz Contract, in addition to the provisions quoted above, also contained the following:

"(4) Purchaser agrees to buy and pay for all cotton covered by this contract promptly as the same is delivered to the compress and purchaser shall pay seller for all such cotton at the office of First State Bank at Three Rivers in Live Oak County, Texas, in which county this contract is performable. Title to such cotton shall remain in seller until seller receives payment therefor as provided herein."

Deliveries of the cotton began in July, 1972. Five or six hundred bales of cotton which were produced under the five contracts were delivered by defendants to plaintiff in Corpus Christi, Texas. Thereafter, apparently in late August, 1972, a dispute arose between the parties regarding harvesting and ginning practices carried out by the defendants, following which plaintiff refused to accept the remainder

of the cotton that was produced from the farms.

The contracts do not expressly name Nueces County, or a definite place therein, as a place of performance of the contractual obligations that plaintiff says were violated. The cotton produced under both the Fred Thoms Contract and the Harry Schulz Contract could only be harvested in Live Oak County, where the farms were physically located. The cotton produced under the Fred Thoms Contract, according to its express terms, was to be "ginned at area gins in _____ Texas"; the cotton produced under the Harry Schulz Contract was required by its express terms to be ginned "at Farmers Co-op Gin in Three Rivers, Texas, or at any other gin mutually agreed in writing between purchaser and seller". We judicially know that Three Rivers is a town in Live Oak County.

In order to sustain venue in Nueces County, the contracts themselves must have *expressly* named that county, or some definite place therein, where the defendants were required to perform the obligation sought to be enforced by plaintiff. Saigh v. Monteith, 147 Tex. 341, 215 S.W.2d 610 (1948); Cottingham Bearings & Service, Inc. v. T. L. Brice Co., 342 S.W.2d 597 (Tex.Civ.App.—Dallas 1961, n. w. h.).; Rogers v. Waters, 262 S.W.2d 521 (Tex. Civ.App.—San Antonio 1953, n. w. h.).

■ Adverting to the allegations of the petition and the dominant purpose of the suit, the nature of the cause of action, as disclosed by the petition, is for cancellation and recission of the contracts, not to recover damages because of a breach of contract or to enforce any specific obligation contained in either of the contracts. The character of the suit, as filed, cannot be changed for venue purposes by allegations in the controverting plea. Wilson's Pharmacy, Inc. v. Behrens Drug Company, 494 S.W.2d 161 (Tex.Sup.1973). The fact that defendants, under the contracts, may have been required to deliver the cotton to plaintiffs at a definite place in Nueces County does not, of itself, cast venue of this, a suit for cancellation of the contracts, in Nueces County. Defendants were not sued for damages for failure to deliver cotton of the quality prescribed by the contracts, nor did plaintiff seek to enforce the delivery of cotton to it.

■ It is immaterial that some obligations imposed by a written contract are required to be performed in a particular county; the controlling fact under Subdivision 5 is that the particular obligation sought to be enforced by the suit is required by the contract itself to be performed in a particular county, or at a definite place therein. Briarcliff, Inc. v. Texas Automatic Sprinklers, Inc., 472 S.W.2d 860 (Tex.Civ.App.—Dallas 1971, n. w. h.); A & S Steel Buildings, Inc. v. Burk, 390 S.W.2d 401 (Tex.Civ.App.—Amarillo 1965, n. w. h.).

■ Venue under Subdivision 5, as amended in 1935, cannot be fixed by implication. Burtis v. Butler Bros., 148 Tex. 543, 226 S.W.2d 825 (1950).

■ Proof of breach of the contract sued on is not one of the venue facts under Subdivision 5. Piano v. Gulf Coast Investment Corporation, 429 S.W.2d 554 (Tex. Civ.App.—Houston 14th Dist. 1968, writ dism'd). See also Sub-Surface Construction Co. v. City of Grey Forest, 470 S.W. 2d 157 (Tex.Civ.App.—San Antonio 1971, n. w. h.). See also Texas Automatic Sprinkler Company v. Ealand-Wood Lumber Company, 297 S.W.2d 958 (Tex.Civ.App. —Beaumont 1957, n. w. h.); Traweek v. Ake, 280 S.W.2d 297 (Tex.Civ.App—El Paso 1955, n. w. h.).

■ Venue was not established under Subdivision 5. Plaintiff's point of error is overruled.

The judgment of the trial court is affirmed.

YOUNG, J., not participating.