**H. MOLSEN & CO., INC., Appellant,**

v.

**Doyle RAINES et al., Appellees.**

**No. 6465.**

Court of Civil Appeals of Texas, El Paso.

Dec. 31, 1975.

Rehearing Denied Jan. 28, 1976.

Grady, Johnson, Smith & Blakeley, Thomas A. Blakeley, Jr., Dallas, for appellant.

John L. Shepherd, Seminole, for appellees.

## OPINION

WARD, Justice.

This is a venue case. Doyle Raines and R. A. Noret sued H. Molsen & Co., Inc. claiming the defendant breached a cotton crop contract by not paying all that was owed for the cotton which was produced and delivered by the plaintiffs. Plea of privilege asked transfer to Dallas County. The controverting affidavit sought to retain venue in Gaines County under Subdivisions 5 and 23 of 1995, Tex.Rev.Civ.Stat.Ann. After non-jury hearing, the trial Court overruled the plea. Though requested, findings of fact and conclusions of law were not filed. We affirm.

■ The cotton crop contract required that the entire production from two farms totaling 700 acres be sold to the defendant for the 1973–74 crop year. The contract had no provision as to the place or county where any obligation was to be performed by the defendant. The contract stated that the cotton was to be ginned at "Paymaster Gin, Sawyer Flat" which the extrinsic evidence showed to be located in Gaines County. The plaintiffs-appellees argue that this meant that they were to deliver the cotton to Molsen at the gin and in turn implied the obligation on the part of Molsen to accept delivery and pay for the cotton at the time and place of delivery, and that Gaines County venue could therefore be sustained under Subdivision 5. This same Subdivision 5 argument was advanced and rejected by the Amarillo Court of Civil Appeals where it construed a cotton crop contract similar to the one now involved. *H. Molsen & Co., Inc. v. Harp and Lovelace*, 516 S.W.2d 433 (Tex.Civ.App.—Amarillo 1974, no writ). The Court held that while an obligation which is to be performed by the defendant under a contract need not be expressly stat-

ed therein, and may be implied, from the four corners of the instrument, Subdivision 5 requires that the place of performance of the obligation which is the basis for the suit must be expressly provided for in the written contract and may not be fixed by implication. The same conclusion was reached in *Gant Cooley Cotton Company, Inc. v. Thoms*, 500 S.W.2d 537 (Tex.Civ.App.—Corpus Christi 1973, no writ): "It is immaterial that some obligations imposed by a written contract are required to be performed in a particular county; the controlling fact under Subdivision 5 is that the particular obligation sought to be enforced by the suit is required by the contract itself to be performed in a particular county, or at a definite place therein. * * * Venue under Subdivision 5, as amended in 1935, cannot be fixed by implication. * * *" Appellees sued on the implied obligation to pay in Gaines County. Venue cannot be maintained under Subdivision 5, and Appellant's relevant point is sustained.

■ This brings on a consideration of Subdivision 23 which the parties agree is the real issue on this appeal. The point presented is that the "Appellees are not entitled to sustain venue in Gaines County under Subdivision 23 of Article 1995 because they failed to prove the existence of a cause of action." The wording of this point might leave something to be desired as to the exact nature of the Appellant's attack, but with the prayer asking for rendition and the nature of the Appellant's comprehensive brief, we hold that it is an assertion that the evidence is legally insufficient to support the trial Court's implied finding that Appellees established a cause of action.

■ The appellate test of the evidence on a venue question is the same as in any other case and because of the no evidence point, we must disregard all adverse evidence and give credit to all evidence that is favorable to the Appellees and indulge every reasonable conclusion favorable to them. *Banks v. Collins*, 152 Tex. 265, 257

S.W.2d 97 (1953). Under the portion of Subdivision 23 involved, venue is proper in Gaines County if it be where the cause of action or a part thereof arose. All elements of the cause of action against the corporate defendant must be shown. *Victoria Bank & Trust Co. v. Monteith*, 138 Tex. 216, 158 S.W.2d 63 (1941); 1 McDonald, Texas Civil Practice, § 4.30.2 at 518. In this breach of contract action, the Appellant concedes the existence of all elements except for the meaning of the contract and the alleged breach.

The cotton crop contract plainly covered the Appellees' entire cotton production for the crop year in question and thereunder Appellees delivered their total production of 220 bales. 118 of these bales were delivered without prejudice to this suit as these bales were all micronaire scaled under 3.5. It is the interpretation of the contract as it refers to 3.5 micronaire that is involved. Micronaire refers to the strength of the cotton fiber and every bale is "miked" at government classing offices. "Good mike cotton" is that with the best spinning value, is on the scale at 3.5 to 4.9, and brings the best price. Cotton above 4.9 becomes coarse and calls for minor discounts in price. Cotton below 3.5 becomes thinner and weaker and brings progressively lower prices.

The part of the contract in dispute follows:

"The contract price shall be figured on net weight against the following prices:

| "GRADE | "Micronaire Ranges—all staples | | | | |
| | "3.5 | 3.3–3.4 | 3.0–3.2 | 2.7–2.9 | 2.6–2.4 |
|---|---|---|---|---|---|
| 21, 22, 30, 31, 32, 40, 41 | 30¢ | 29¢ | 28¢ | 26.50¢ | 17¢ |
| 42, 50, 51, 52 | 28¢ | 27¢ | 25¢ | 21¢ | 16.50¢ |
| 23, 33, 43, 53 60, 61 | 23¢ | 22¢ | 20¢ | 18¢ | 15¢ |
| 24, 34, 44, 54 70, 71 | 17¢ | 17¢ | 16¢ | 15¢ | 14¢ |

"Oily bales 200 points discount.

"B. G.'s and Minus 2.4 Micronaire will be at market price, also yellow stained."

As seen, no mention is made of any of that cotton scaled for readings above 3.5 micronaires, and Appellees contend that for that portion of the cotton which was sold under the contract calling for total production, market price at the time of delivery should be paid.

■ The evidence at the hearing consisted of exhibits and the testimony of Appellee Raines, and that of J. L. Brett who was the Appellant's agent. Raines testified to his executing the contract, and his delivery of all of the cotton production, and receipt for all payments except for that cotton with a micronaire reading above 3.5. The Appellant's proof consisted of evidence showing that the contractual term of 3.5 micronaire was not used in its usual and popular sense, but was a technical trade term meaning good mike cotton and included all that miked between 3.5 and 4.9. Such evidence is admissible even though the writing is perfectly intelligible without it. 2 C. McCormick & R. Ray, Texas Evidence, § 1685 at 528.

■ Raines testified that "3.5" meant "3.5" to him and that at the time of executing the contract he was not concerned with the higher miked cotton because over his previous seven years of operations he hardly ever produced cotton with micronaire readings above 3.5. Raines further stated that he had seen other cotton crop contracts and they all "plainly got it down 3.5 through 4.9"; that the normal market and newspaper quotations specify it as "3.5 through 4.9"; that the U. S. Government loan sheets listed it the same way—"they got it plainly 3.5 through 4.9". The Appellant's own forms for the 1973–74 Cotton Loan Rates for the Lubbock Territory carry the notation "3.5 through 4.9". Thus, there was evidence which the trial Court accepted and which justified the implied finding that the language was used in the popular sense to mean 3.5 only.

*H. Molsen & Co., Inc. v. Harp and Lovelace,* supra, is not in conflict with this holding. There the farmers filed a declaratory judgment action and the dominant purpose of their pleadings was to establish that

**150**

there was no contract between the parties requiring the plaintiffs to deliver any of the cotton which Molsen demanded. In addition, the Amarillo Court held there was no evidence to support any contract theory with a subsequent breach by Molsen. The parties there testified that it was not their intention to leave the price open. This evidence prevented the formation of an open price term contract because of the first sentence of Tex.Bus. & Comm.Code Ann. § 2.305(a).

Here, the pleadings alleged the breach of an open price term contract and the evidence justified the implied finding of the Court that the parties intended to enter a binding agreement covering the entire production with a portion being open priced. The Appellant's "no evidence" point on Subsection 23 is overruled. The judgment of the trial Court is affirmed.